# UNITED STATES DISTRICT COURT

## For the

## SOUTHERN DISTRICT



Case No._____ 2:24-cv-14292 Cannon/Maynard

Judge_____

**Jury Trial**

**Plaintiffs**

√Scott A. Principe and Mary Downam Principe,

896 NE. 104th CT.

Okeechobee, FL. 34974

√David A. Steen

2114 SE. 34th Lane

Okeechobee FL. 34974

V.

Defendants

OKEECHOBEE COUNTY MUNICIPALITY√

Okeechobee County Property Appraiser√

Mickey L. Bandi

409 NW. 2nd Ave. Suite B

Okeechobee FL. 34972

Okeechobee County Tax Collector√

Celeste Watford

409 NW. 2nd Ave. Suite A

Okeechobee FL. 34972

# TABLE OF CONTENTS

Complaint.................................................................

Courts jurisdiction.............................................P. 1

General factual allegations...........................PP.2-39

Violations and Criminal Charges................................. PP.28-39

Conclusion................................................ PP.39-40

Relief Sought.................................................P.41

Monetary Loss and Real Damages...................................P.42

Compensatory Damages...........................................PP.42-43

Punitive Damages.............................................PP.43-44

Damages Restated.........................................P.44

COMPLAINT

Plaintiffs sue Defendants in Their Official Capacity for money damages under Title 42 § 1983 for Deprivation of Rights.

The Plaintiffs have a substantive right to acquire, possess, and protect property. That Right is protected and guaranteed by The Florida Constitution. There is no Lawfully Promulgated Procedure to Tax the Plaintiff's property (shelter). Through extensive research of the Florida Constitution Taxation Section, Florida Statute Taxation section, Florida Administrative Code and Case Law confirms it. The Municipality's inadequate training of their employees in the Florida Constitution, Florida Statutes and Florida Administrative Codes, the lack of training has left the Defendants to believe they can tax everything using their commercial taxing procedure and using different applications to get the people that wouldn't know any better on the tax roll, trusting the Defendants are well trained and this is how the applications, and the taxing procedure works.

 This has caused the Plaintiff's Property to be Taxed Unlawfully by the Defendants using the Commercial Taxing procedure on the plaintiff's property (shelter). This is the direct cause of the violation of the Plaintiffs Right to peacefully own, use and enjoy their property. Protected by The United States Constitution and The Florida Constitution. This is not only unlawful but also criminal under Federal and State Statutes. The Plaintiffs will show and prove the unlawful taxing procedure and the criminal violations committed against the Plaintiffs, by Defendants.

## COURTS JURISDICTION

(1) Plaintiffs reside in Okeechobee County, Florida where allegations occurred.

(2) Defendants live and work in Okeechobee County, Florida were allegations occurred.

(3) Money damages in excess of $75,000

(4) This Court has jurisdiction under Title 42 § 1983 Depravation of rights.

1

GENERAL FACTUAL ALLEGATIONS

(5) The Florida constitution Article l section 2 states Basic Rights. – All natural

persons, female and male alike, are equal before the law and have inalienable

rights, among which are the right to enjoy and defend life and liberty, to pursue

happiness, to be rewarded for industry, and to AQUIRE, POSSESS AND PROTECT

PROPERTY. No person shall be deprived of any right because of race, religion,

national origin, or physical disability.

"The right to acquire and own property, and to deal with it and to use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. Before them, it existed. It is a part of the citizen's natural liberty, an expression of his freedom, guaranteed as inviolate by every American bill of rights" Arcgvusgio O' haras Appeal, 389 Pa. 35- Pa: Supreme Court 1957; Miller vs. Beaver falls, 368 Pa. 189- Pa: Supreme Court 1951: Bilbar Cons. Co. v Easttown Twp. Of A., 393 Pa. 62 – Pa: Supreme Court 1958; Concord Township Appeal, 439 Pa. 466 – Pa: Supreme Court 1970; Parker vs. Hough, 420 Pa. 7, 10-11, 215 A. 2d 667; Cleaver vs. Board of Adjust, 414. Pa. 367, 371-372, 200 A. 2d 408; Andress v. Zoning Board of adjustment, 410 Pa. 77, 87, 188 A. 2d 709; Village of Euclid vs. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114 (1926)

(6) The Florida Statute Title XIV TAXATION AND FINANCE: Chapter 196

EXEMPTION § 196.181 States Exemption of household goods and personal effects. -

There shall be exempt from taxation to every person residing and making his or her

permanent home in this state household goods and personal effects. Title to such

household goods and personal effects may be held individually, by the entireties,

jointly or in common with others.

(7) Chapter 192 TAXATION: GENERAL PROVISIONS § 192.001, section

2

(11) Personal property, for the purpose of ad valorem taxation, shall be divided into four categories as follows:

(a) "Household goods" means wearing apparel, furniture, appliances, and other items ordinarily found in the home and used for the comfort of the owner and his or her family. Household goods are not held for commercial purposes or resale.

(8) F.A.C. 12D-7.002 Exemption of Household Goods and Personal Effects.

Only household goods and personal effects of the taxpayer which are employed in use of serving the creature comforts of the owner and not held for commercial purposes are entitled to the exemption provided by section 196.181, F.S. "Creature comforts" are things which give bodily comfort, such as food, clothing and shelter. Commercial purposes includes owning household goods and personal effects as stock in trade or as furnishings in rental dwelling units.

BLACK 'S LAW DICTIONARY sixth edition, pg.1376 Shelter: In statutes relating to the provision of food, clothing, and shelter for one's children, term generally refers to a home with proper environments, as well as protection from the weather.

(9) F.A.C. 12D-8.001 All Property to Be Assessed.

(1) General.

(a) The property appraiser shall make a determination of the value of all property (whether such property is taxable, wholly or partially exempt, or subject to classification reflecting a value less than its just value at its present highest best use) located within the county according to its just or

3

fair market value on the first day of January of each year and enter the same upon the appropriate assessment roll under the heading "Just Value." If the parcel qualifies for a classified use value shall be shown under the heading "Classified Use Value."

(b) The following are specially excluded from the requirements of paragraph (a) above.

(b) 5  Household goods and personal effects of every person residing and making his or her permanent home in this state are exempt from taxation. Title to such household goods and personal effects may be held individually, by the entireties, jointly, or in common with others. Storage in a warehouse, or safekeeping, in and of itself, does not alter the status of such property. Personal effects is a category of personal property which includes such items as clothing, jewelry, tools, hobby equipment. No return of such property or claim for exemption need be filed by an eligible owner and no entries need be shown on the assessment roll.

(10)  The F.A.C. 12D-8.001 Goes on to say:  No return of such property or claim for exemption need be filed by an eligible owner and no entries need be shown on the assessment role.  The F.A.C. 12D-7.002 Defines household goods and personal effects as creature comforts which are defined as food, clothing, and shelter.  Which would receive the exemption in F.S. 196.181 as in the F.A.C.12D-7.013 section (5) residence being granted the exemption and the remainder being taxed.  We see here

4

that even the person or other legal entity (Taxpayer) has a right to shelter and the necessities.

(11) The very first U.S.C. Federal Statute Title 1 § 1 defines the word person as the word persons" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.

(12) The very first Florida Statute Title 1 Chapter 1 § 1.01 Definitions. section

(3) defines the word person as; The Word Person" includes individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations.

(13) Title XIV TAXATION and FINANCE Chapter 198 ESTATE TAXES § 198.01 Definitions. –

(3) "person" means persons, corporations, associations, joint stock companies, and business trust.

(14) Title XIV TAXATION AND FINANCE Chapter 192 TAXATION:  GENERAL PROVISION §192.001 Definitions. – All definitions set out in chapters 1 and 200 that are applicable to this chapter are included herein. In addition, the following definitions shall apply in the imposition of ad valorem taxes:

(13) "Taxpayer" means **the person or other legal entity in whose name property is assessed,** including an agent of a timeshare period titleholder.

(15) Title XIV TAXATION AND FINANCE Chapter 220 INCOME TAX CODE

§220.03 Definitions. – section

(2) DEFINITIONAL RULES. -when used in this code and neither otherwise distinctly expressed nor manifestly incompatible with the intent thereof:

(a) The word "corporation" or "taxpayer" includes the words "and its successors and assigns" as if these words, or words of similar import, were expressed.

"Courts should be acute to distinguish between an exaction which in substance and reality is what it pretends to be and a scheme to lay a tax upon a nontaxable subject by a deceptive use of words." Macallen Co. v Massachusetts, 279 U.S. 620, 73 L Ed 874, 49 S Ct 432, 65 ALR 866, reh den 280 U.S. 513, 74 L Ed 585, 50 S Ct 14.

(16) The person defined in the statutes, or the person or other legal entity (TAXPAYER) are one of the same, making an income from their property, exercising a taxable privilege, unlike the Natural person mentioned in the State Constitution exercising their Rights protected and guaranteed by the Florida Constitution Article 1 Section 2 and the 5th and 14th Amendment of the United States constitution.

(17) Title XIV TAXATION AND FINANCE Chapter 192 TAXATION: GENERAL PROVISIONS § 192.001 Definitions. – section.

(8) "Homestead" means that property described in s. 6(a), Art. VII of the State Constitution.

(18) Florida Constitution ARTICLE VII SECTION 6 Homestead exemptions. - SECTION 6. (a) Every person who has the legal or equitable title to real estate and

maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of twenty-five thousand dollars and, for all levies other than school district levies, on the assessed valuation greater than fifty thousand dollars and up to seventy-five thousand dollars, upon establishment of right thereto in the manner prescribed by law. The real estate may be held by legal or equitable title, by the entireties, jointly, in common, as a condominium, or indirectly by stock or membership representing owner's or member's proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight years. The exemption shall not apply with respect to any assessment roll until such roll is first determined to be in compliance with the provisions of section 4 by a state agency designated by general law. This exemption is repealed on the effective date of any amendment to this Article which provides for the assessment of homestead property at less than just value.

(19) Title XIV TAXATION AND FINANCE Chapter 193 ASSESSMENTS § 193.011 Factors to consider in deriving just valuation. -In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors: section

(3) The location of said property;

(4) The quantity or size of said property;

7

(5) The cost of said property and the present replacement value of any improvements thereon;

(6) The condition of said property;

(7) THE INCOME FROM SAID PROPERTY.

(20) Again, they are talking about the person defined herein the person or other legal entity (TAXPAYER) owning a property with income produced from said property and exercising a taxable privilege from said property in which they could file homestead exemption on the residence of the owner as his or her residence or another dependent on the owner as in family, stock, membership or employee.

(21) Title XIV TAXATION AND FINANCE Chapter 195 PROPERTY ASSESSMENT ADMINISTRATION AND FINANCE

§ 195.073 Classification of property. – All items required by law to be on the assessment rolls must receive a classification based upon the use of the property. THE DEPARTMENT SHALL PROMULGATE UNIFORM DEFINITIONS FOR ALL CLASSIFICATIONS. The department may designate other subclassifications of property. No assessment roll may be approved by the department which does not show proper classifications.

"… an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce – affecting activity…" Jones vs. United States, 529 U.S., 146 L Ed 2d 902, 120 S. Ct. (May 22, 2000).

(22) TITLE XL REAL AND PERSONAL PROPERTY Chapter 718

CONDOMINIUMS § 718.103 Definitions. - section

(16) "Declaration" or "declaration of condominium" means the instrument or instruments by which a condominium is created, as they are from time to time amended.

(17) 'Developer" means a person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business but does not include: (a) An owner or lessee of a condominium or cooperative unit who has acquired the unit for his or her own occupancy.

(18) "Division" means the Division of Florida Condominiums, Timeshares, and Mobile Homes of the Department of Business and professional Regulation.

(29) "Unit" means a part of the condominium property which is subject to exclusive ownership. A unit may be in improvements, land, or land and improvements together, as specified in the declaration.

(30) "Unit owner" or "owner of a unit" means a record owner of a    legal title to a condominium parcel.


(23) Title XL REAL AND PERSONAL PROPERTY Chapter 719 COOPERATIVES §719.103 Definitions. -As used in this chapter: section,

(12) 'Cooperative" means that form of ownership of real property wherein legal title is vested in a corporation or other entity and the beneficial use is evidenced by an ownership interest in the association and a lease or other

9

muniment of title or possession granted by the association as the owner of all the cooperative property.

(17) "Division" means the Division of Florida Condominiums, Timeshares, and Mobile Homes of the Department of Business and Professional Regulation.

(26) "Unit" means a part of the cooperative which is subject to exclusive use and possession. A unit may be improvements, land, or land and improvements together, as specified in the cooperative documents. An interest in a unit is an interest in real property.

(27) "Unit owner" or "owner of a unit" means the person holding a share in the cooperative association and a lease or other muniment of title possession of a unit that is granted by the association as the owner of the cooperative property.

(24) Title XL REAL AND PERSONAL PROPERTY Chapter 720 HOMEOWNERS ASSOCIATIONS §720.301 Definitions. - AS used in this chapter, the term:

(2) "Common area" means all real property within a community which is owned or leased by an association or dedicated for use or maintenance by the association or its members, including, regardless of whether title has been conveyed to the association:  (a) Real property the use of which to the association or its members by a recorded plat; or (b) Real property committed by declaration of covenants to be leased or conveyed to the association.

(4) "Declarations of covenants," or "declaration," means a recorded written instrument or instruments in the nature of covenants running with the land which

10

subject the land comprising the community to the jurisdiction and control of an association or associations in which the owners of the parcels, or their association representatives, must be members.

(6) "Developer" means a person or entity that: (a) Creates the community served by the association; or (b) Succeeds to the rights and liabilities of the person or entity that created the community served by the association, provided that such is evidenced in writing.

(7) 'Division" means the Division of Florida Condominiums, Timeshares, and Mobile Homes in the Department of Business and Professional Regulation.

(9) "Homeowners' association" or "association" means a Florida corporation responsible for the operation of a community or a mobile home subdivision in which the voting membership is made up of parcel owners, or their agents, or a combination thereof, and in which membership is a mandatory condition of parcel ownership, and which is authorized to impose assessments that, if unpaid, may become lien on the parcel. The term "homeowners' association" does not include a community development district or other similar special taxing district created pursuant to statute.

(11) "Parcel" means a platted or unplatted lot, tract, unit, or other subdivision of real property within a community, as described in the declaration: (a) which is capable of separate conveyance; and (b) Of which the parcel owner, or association in which the parcel owner must be a member, is obligated: 1.By the governing

11

documents to be a member of an association that serves the community; and 2.To pay the homeowners' association assessments that, if not paid may result in a lien .

(12) "Parcel owner" means the record owner of legal title to a parcel.

(25) TITLE XL REAL AND PERSONAL PROPERTY (2023) Chapter 723 MOBILE HOME PARK LOT TENANCIES §723.003 Definitions. - As used in this chapter, the term:

(2) "Division" means the Division of Florida Condominiums, Timeshares, and Mobile Homes of the Department of Business and Professional Regulation.

(3) "Electronic transmission" means a form of communication, not directly involving the physical transmission or transfer of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient and that may be directly reproduced in a comprehensible and legible paper form by the recipient through an automated process, such as a printer or copy machine. Examples of electronic transmission include, but are not limited to, telegrams, facsimile transmission of images, and text that is sent via e- mail between computers. Electronic transmission does not include oral communication by telephone.

(8) "Mobile home" means a residential structure, transportable in one or more sections, which is 8 body feet or more in width, over 35 body feet in length with the hitch, built on an integral chassis, designed to be used as a dwelling when connected to the required utilities, and not originally sold as a recreational vehicle,

12

and includes the plumbing, heating, air- conditioning, and electrical systems contained therein.

(9)" Mobile home lot" means a lot described by a park owner pursuant to the requirements of s. 723.012, or in a disclosure statement pursuant to s.723.013, as a lot intended for the placement of a mobile home.

(10) "Mobile home lot rental agreement" or "rental agreement" means any mutual understanding or lease, whether oral or written, between a mobile home owner and a mobile home park owner in which the mobile home owner is entitled to place his or her mobile home on a mobile home lot for either direct or indirect remuneration of the mobile home park owner.

(11) "Mobile home owner," "mobile homeowner," "home owner," or "homeowner" means a person who owns a mobile home and rents or leases a lot within a mobile home park for residential use.

(12) "Mobile home park" or "park" means a use of land in which lots or spaces are offered for rent or lease for the placement of a mobile home and in which the primary use of the park is residential.

(14) "Mobile home subdivision" means a subdivision of mobile homes where individual lots are owned by owners and where a portion of the subdivision or the amenities exclusively serving the subdivision are retained by the subdivision developer.

(26)    Now we see here again a person, or the person or other legal entity as

defined herein exercising a taxable privilege producing an income from said

property and are eligible to file for a homestead exemption on the permanent

residence of the owner, or another legally or naturally dependent upon the owner,

shall be exempt from taxation thereon. Unlike the person or the person or other

legal entity exercising a taxable privilege, the Plaintiffs are exercising their right to

own property and have shelter for protection from the weather the very necessities

to sustain life for their families, and themselves, and the protection for their

belongings protected and guaranteed by Article 1 section 2 of the Florida

Constitution and the 5th and 14th Amendment of the United States constitution.

Supreme Court of Florida, No.  SC2020-1479, Bill Furst, etc..., et al.,
Petitioners vs, Rob Rebholz, etc., et al., Respondents.  April 6, 2023, The Legislature
has implemented the constitutional homestead tax exemption through section
196.031, Florida Statues (2014), which Rebholz has not challenged.  Subsection
(1)(a) says that, when a property owner "in good faith" makes real property in this
state his or a dependent's "permanent residence," the homestead tax exemption
applies to "the residence and contiguous real property." § 196.031(17), Fla. Stat.
(2014).  Our Court has observed that "most determinations regarding whether a
permanent residence is being maintained on Florida property will involve some
level of factual inquiry regarding the actual use of the residential property in
question."   Garcia v. Andonie, 101 So. 3d 339, 347 (Fla. 2012) (emphasis added).  A
review of section 196.011, Florida Statues (2014), confirms that residency is a use-
based requirement.  Subsection (1)(a) establishes an application requirement for tax
exemptions that are based on property's "ownership and use."   Subsection (9)(a)
then shows that this category includes homestead exemption ceases to use the
property as his or her homestead."

(27)  FAC 12D-7.013 Homestead Exemptions- Abandonment

Section (5) Property used as a residence and also used by owner as a place of

business does not lose its homestead character.  The two uses should be separated

14

with that portion used as a residence being granted the exemption and the remainder being taxed.

(28)  Title XIV TAXATION AND FINANCE Chapter 195 PROPERTY ASSESSMENT ADMINISTRATION AND FINANCE §195.027 Rules and Regulations. -

Section (1) The Department of Revenue shall prescribe reasonable rules and regulations for the assessing and collecting of taxes, and such rules and regulations shall be followed by the property appraisers, tax collectors, clerks of the circuit court, and value adjustment boards.  It is hereby declared to be the legislative intent that the department shall formulate such rules and regulations that property will be assessed, taxes will be collected, and the administration will be uniform, just, and otherwise in compliance with the requirements of the general law and the constitution.

Black's Law Dictionary, sixth edition pg. 1217
Personal property.  In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate.  A right or interest in things personal, or right or interest less than a freehold in realty, or any right or interest which one has in things movable. Generally, all property other than real estate; as goods, chattels, money, notes, bonds, stocks and choses in action generally, including intangible property.  Bismark Tribune Co. v. Omdahl, N.D., 147 N.W.2d 903,906.  It is sometimes designated as personalty when real estate is termed realty.  Personal property also can refer to property which is not used in a taxpayer's trade or business or held for the production or collection of income. When used in this sense, personal property could include both realty (e.g. a personal residence) and personalty (e.g. personal effects such as clothing and furniture).

15

(29)  The inadequately trained Defendants are using the commercial taxing procedure and applying it to the private sector.  **See Exhibits A1 and A2 (Assessments of Plaintiffs property)**

(30)    The Defendants label the Plaintiff's property on the assessment roll, using the DOR code 0200 - Mobile Home. We must remember F.S § 195.073 The DOR shall promulgate uniform definitions for all classifications.

"Such misuse of the law usually implies malice, because unlawful, willful acts are considered malicious by those whom these acts injure. Similarly, want of probable cause is not essential because there can be no such thing as probable cause for a willful misuse of process for an unlawful objective, or for an ulterior purpose not intended by the law." **Psinakis vs. Psinakis, 221 F. 2d 418 (3rd Cir. 1955).**

(31) FAC 12D-6.001   Mobile Homes and Prefabricated or Modular Housing Units Defined.

(1)  Mobile Homes are vehicles which satisfy the following:

(a)  Manufactured upon a chassis or under carriage as an integral part thereof; and,

(b)  Without independent motive power; and,

(c)  Designed and equipped to provide living and sleeping facilities for use as a home, residence, or apartment; or designed for operation over streets and highways.

(d)  The definition of "mobile home" shall be as defined under Sections 320.01(2) and 723.003(3), F.S (1989) and under paragraph 12A-1.007(11)(a) F.A.C.

16

(32)  TITLE XXIII MOTOR VEHICLES   Chapter 320 MOTOR VEHICLE LICENSES

§ 320.01 Definitions, general. -

Section (2)(a) "Mobile Home" means a structure, transportable in one or more sections, which is 8 body feet or more in width and which is built on integral chassis and designed to be used as a dwelling when connected to the required utilities and includes the plumbing, heating, air-conditioning, and electrical systems contained therein. For tax purposes, the length of a mobile home is the distance from the exterior of the wall nearest to the drawbar and coupling mechanism to the exterior of the wall at the opposite end of the home where such walls enclose living or other interior space. Such distance includes expandable rooms, but excludes bay windows, porches, drawbars, couplings, hitches, wall and roof extensions, or other attachments that do not enclose interior space. In the event that the mobile home owner has no proof of the length of the drawbar, coupling, or hitch, then the tax collector may in his or her discretion either inspect the home to determine the actual length or may assume 4 feet to be the length of the drawbar, coupling, or hitch.

(33)  TITLE XL REAL AND PERSONAL PROPERTY Chapter 723 MOBILE HOME PARK LOT TENANCIES (1997) §723.003

(3) The term "mobile home" means a residential structure, transportable in one or more sections, which is 8 body feet or more in width, over 35 body feet in length

17

with the hitch, built on an integral chassis, designed to be used as a dwelling when connected to the required utilities, and not originally sold as a recreational vehicle, and includes the plumbing, heating, air conditioning, and electrical systems contained therein.

(34) FAC 12A-1.007 Aircraft, Boats, Mobile Homes, and Motor Vehicles.

 (11) Mobile Homes.

 (a) For purposes of this subsection the term "mobile home" means and includes a structure, transportable in one or more sections, which is 8 body feet or more in which is built on an integral chassis and designed to be a dwelling when connected to the required utilities and includes the plumbing, heating, air-conditioning, and electrical systems contained therein.

(35) The F.A.C 12D-6.001 defines Mobile home in chapter 320 Titled MOTOR VEHICLE LICENSES in which you would need to purchase a license plate to pull the residence from place to place over the streets and highways of the state of Florida.

(36) The F.A.C. 12D-6.001 defines Mobile home in chapter 723 Titled MOBILE HOME PARK LOT TENANCIES   This is clearly The Person or other Legal Entity (Taxpayer) exercising a taxable privilege and regulated by The Division of Florida condominiums, Timeshares, and Mobile Homes of the Department of Business and professional Regulation and the permanent residence of the owner, or another

legally or naturally dependent upon the owner would be eligible for a Homestead Exemption on a unit owned by the owner of the park.

(37) The F.A.C. 12D-6.001 defines Mobile home in F.A.C. 12A-1.007 Titled Aircraft, Boats, Mobile Homes, and Motor Vehicles.(11)(a) For purposes of this subsection the term "Mobile home" means and includes a structure, transportable in one or more sections, which is 8 body feet or more in width and which is built on an integral chassis and designed to be used as a dwelling when connected to the required utilities and includes the plumbing heating, air-conditioning, and electrical systems contained therein.

(38) As we see the same in the Florida Constitution Article VII section 1 (b) Motor vehicles, boats, airplanes, trailers, trailer coaches, and mobile homes, as defined by law, shall be subject to a license tax for their operation in the amounts and purposes prescribed by law, but shall not be subject to ad valorem taxes.

(39) Title XXXIII REGULATION OF TRADE, COMMERCE, INVESTMENTS, AND SOLICITATIONS  Chapter 513 MOBILE HOME AND RECREATIONAL VEHICLE PARKS Goes on to tell us in § 513.01section (2)  "Lodging park" means a place set aside and offered by a person, for either direct or indirect remuneration of the operator of the place, in which 75 percent of the mobile homes or recreational vehicles or combination thereof are owned by the operator and offered for rent to the public and which is not licensed under chapter 509.

(3)  "Mobile home" means a residential structure that is transportable in one or more sections, which structure is 8 body feet (2.4 meters) or more in width, over 35 feet in length with the hitch, built on integral chassis, and designed to be used as a dwelling when connected to the required utilities, and includes the plumbing, heating, air-conditioning and electrical systems contained in the structure.

(4) "Mobile home park" means a place set aside and offered by a person, for either direct or indirect remuneration of the owner, lessor, or operator of such place, for parking, accommodation, or rental of five or more mobile homes.

(5) "Occupancy" means the length of time that a recreational vehicle is occupied by a transient guest and not the length of time that such vehicle is located on the leased recreational vehicle site. A recreational vehicle may be stored and tied down on site when not in use to accommodate the needs of the guest. The attachment of a recreational vehicle to the ground with tie-downs or other removable fasteners, and the attachment of carports, porches, screen rooms, and similar appurtenances with removable attaching devices, do not render the recreational vehicle a permanent part of the recreational vehicle site.

(6) "Operator" means the owner, operator, keeper, lessor, proprietor, manager, assistant manager, desk clerk, agent, or employee of a mobile home, lodging, or recreational vehicle park or a recreational camp who is designated by the permittee as the individual solely responsible for the daily operation of the park or camp and its compliance with this chapter and the rules adopted under this chapter.

(7) "Permittee" means a person who applies for and is granted a permit under this chapter and who is ultimately responsible for the operation of the mobile home, lodging, or recreational vehicle park or the recreational camp and the compliance of the park or camp with this chapter and the rules adopted under this chapter.

(8) "Person" means an individual, association, partnership, corporation, or governmental unit.

(9) "Recreational camp" means one or more buildings or structures, tents, trailers, or vehicles, or any portion thereof, together with the land appertaining thereto, established, operated, or used as living quarters for five or more resident members of the public and designed and operated for recreational purposes.

(40) FAC 12D-6.002 Assessment of Mobile Homes.

(1) This rule subsection shall apply if the owner of the mobile home is also the owner of the land on which the mobile home is permanently affixed and the mobile home and has a current sticker affixed, regardless of the series.

(a) The property appraiser shall assess such mobile home as realty, and it shall be taxed as real property. The property appraiser should get proof of title of the mobile home and land. Section 319.21, F.S. states that no person shall sell a motor vehicle for purposes of the registration and licenses provisions without delivering a certificate of title to the purchaser. The owner may provide evidence of affixation on form DR-402 Declaration of Mobile home as real property, to assist the property appraiser. However, this information shall not be determinative.

(41)  The DR-402 application Titled DECLARATION OF MOBILE HOME AS REAL

PROPERTY; **See Exhibit B (Blank DR- 402 Application)**

Has multiple spaces for tag numbers and multiple spaces for identification

numbers as in a property having multiple Mobile homes on a property as defined in

F.A.C. 12D-6.001 and F.S. chapter 723 being a mobile home park and exercising a

taxable privilege and being regulated under the Division of Florida Condominiums,

Timeshares, and Mobile Homes of the department of Business and Professional

Regulation, and once that application is approved then can file DR-501 Titled

ORIGINAL APPLICATION FOR HOMESTEAD AND RELATED TAX

EXEMPTIONS on one of the units as the permanent residence of the owner, or

another legally or naturally dependent upon the owner. The DR-501 application has

on it F.S. 196.011(1)(b) The form to apply for an exemption under s. 196.031 s.

196.081 s. 196.091 s. 196.101 s. 196.102 s. 196.173 s. 196.202 must include a space

for the applicant to list the social security number of the applicant and of the

applicant's spouse, if any. If an applicant files a timely and otherwise complete

application, and omits the required social security numbers, the application is

incomplete. In that event, the property appraiser shall contact the applicant, who

may refile a complete application by April 1. Failure to file a complete application

by that date constitutes a waiver of the exemption privilege for that year, except as

provided in subsection (7) or subsection (8). **See Exhibits C1 and C2 (Plaintiffs**

**Homestead exemption applications)**

22

(42) We also see in F.S.196.011 (1)(a) Except as provided in s. 196.081(1)(b), every person or organization who, on January 1, has the legal title to real or personal property, except inventory, which is entitled by law to exemption from taxation as a result of its ownership and use shall, on or before March 1 of each year, file an application for exemption with the county property appraiser, listing and describing the property for which exemption is claimed and certifying its ownership and use. The Department of Revenue shall prescribe the forms upon which the application is made. Failure to make application, when required, on or before March 1 of any year shall constitute a waiver of the exemption privilege for that year, except as provided in subsection (7) or subsection (8).

(43)  Here again we see every person or organization or the person or other legal entity being one of the same. Having legal title to real or personal property as defined in Title XL Titled REAL AND PERSONAL PROPERTY:  Chapters 718-723 are talking about the person or other legal entity that would file for Homestead Exemption.

(44)  The F.S. §196.031 section (2) As used in subsection (1), the term "cooperative corporation" means a corporation, whether for profit or not for profit, organized for the purpose of owning, maintaining, and operating an apartment building or apartment buildings or a mobile home park to be occupied by its stockholders or members; and the term "tenant-stockholder or member" means an individual who is entitled, solely by reason of his or her ownership of stock or membership in a cooperative corporation, as evidenced in the official records of the office of the clerk

23

of the circuit court of the county in which the apartment building is located, to occupy for dwelling purposes an apartment in a building owned by such corporation or to occupy for dwelling purposes a mobile home which is on or a part of a cooperative unit. A corporation leasing land for a term of 98 years or more for the purpose of maintaining and operating a cooperative thereon shall be deemed the owner for purposes of this exemption.

(45) The Defendants are using (DOR) code 0200 defined in F.A.C. 12D-6.001 as a Mobile Home Park is clearly for a cooperative, corporation, or other legal entity. This is done under color of law, there is no lawfully promulgated procedure to tax the Plaintiffs right to own property and have the necessities to sustain life leaving the Defendants to tax the Plaintiffs as a legal entity and using the DR-501 application to get the Plaintiffs on the tax roll under color of law for financial gain.

(46) Owning property and having the necessities to sustain life is a Right and not a privilege, unlike using property to conduct business as the person or other legal entity would be engaged in, exercising a taxable privilege.

(47) BLACK'S LAW DICTIONARY 6thEDITION Defines Necessities see Necessaries. Pg.1029
    Necessaries. An article which a party actually needs. State v. Earnest, Mo. App., 162 S.W.2d 338, 341. Things indispensable, or things proper and useful, for the sustenance of human life. Necessities consist of food, drink, clothing, medical attention, and a suitable place of residence, and they are regarded as necessaries in the absolute sense of the word.


"Indeed, it is that the right of property lies at the foundation of our constitutional government and is necessary to the existence of civil liberty and free institutions, and there is no greater safeguard to the perpetuity of our republic and traditions

and institutions than the responsibility of property ownership. The constitutional prohibition against the deprivation of property without due process of law reflects the high value embedded in constitutional and political history, that is on a person's right to enjoy what is his, free of governmental interference." **Miller v McKenna, 23 Cal 2d 774, 147 p2d 531; Palmetto v Katsch, 86 Fla 506, 98 So 352; Fuentes vs. Shevin, 407 U.S. 67, 32 L Ed 2d 556, 92 S Ct 1983, 10 UCCRS 913, reh den 409 U.S. 902, 34 L Ed 2d 165, 93 S Ct 177.**

(48)   The Defendants not only place the Plaintiffs on tax roll and tax the plaintiffs

as the Person or other Legal Entity under color of law but also sell tax deed

certificates to the Plaintiffs property as the Person or other Legal Entity under color

of law. This not only violates the Plaintiffs' Right to own property, but also deprives

them of the necessities to sustain life. **See exhibits D1 and D2 (The sale of Tax**

**Deed Certificates to the Plaintiffs property)**

**Flint v. Stone Tracy Co., 220 U.S. 107, 31 S. Ct. 342 (1911)**
Undoubtedly, in the course of the opinion in the Pollock Case it was said that if a tax was direct within the constitutional sense the mere erroneous qualification of it as an excise or duty would not take it out of the constitutional requirement as to apportionment. But this language related to the subject-matter under consideration and was but a statement that a tax which was in itself direct, because imposed upon property by reason of its ownership, could not be changed by affixing to it the qualifications of excise or duty. Here we are asked to decide that a tax is a direct tax on property which has at all times been considered as the antithesis of such a tax; that is, has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy. Considering that the constitutional rule of apportionment had its origin in the purpose to prevent taxes on persons solely because of their general ownership of property from being levied by any other rule than that of apportionment, two things were decided by the court: First, that no sound distinction existed between a tax levied on a person solely because of his general ownership of real property, and the same tax imposed solely because of his general ownership of personal property. Secondly, that the tax on the income derived from such property, real or personal, was the legal equivalent of a direct tax on the property from which said income was derived, and hence must be apportioned these conclusions, however, lend no support to the contention that it was decided that duties, imposts and excises, which are not the essential equivalent of a tax on property generally, real or personal, solely because of its ownership,

must be converted into direct taxes, because it is conceived that it would be demonstrated by a close analysis that they could not be shifted from the person upon whom they first fall. The same view was taken of the Pollock Case in the subsequent case of Spreckels Sugar Refining co. v. McClain, 192 U.S. 397. And in the same connection the late Chief Justice, delivering the opinion of the court in Thomas v. United States, 192 U.S. 363 in speaking of the words duties, imposts and excises, said: "We think that they were used comprehensively to cover customs and excise duties imposed on importation, consumption, manufacture and sale of certain commodities, privileges, particular business transactions, vocations, occupations and the like." Duties and imposts are terms commonly applied to levies made by governments on the importation or exportation of commodities. Excises are "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." Cooley, Const. Lim., 7th ed., 680. The tax under consideration, as we have construed the statute, may be described as an excise on the particular privilege of doing business in a corporate capacity, i.e., with the advantages which arise from corporate or quasi- corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the Thomas Case, 1292 U.S. 363 supra, the requirement to pay such taxes involves the exercise of privileges, and the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable.

**Redfield v. Fisher, 292 P 813, at819 (1930).** "The individual, unlike the corporation, cannot be taxed for the mere privilege of existing. The corporation is an artificial entity which owes its existence and charter powers to the state; but the individual's rights to live and own property are natural rights for the enjoyment of which an excise cannot be imposed."

Many carefully reasoned cases can be readily assembled which held, under the circumstances present in them, that a tax on income from property is a tax upon the property which produced the income. One of the most notable of these decisions is found in Pollock v. Farmers' Loan Trust Co., 158 U.S. 601 (15 S. Ct. 912, 39 L. Ed. 1108) there the Federal Supreme Court, after the matter had been twice argued, held that a tax on income derived from real or personal property is a direct tax upon the property which earned the income.

To the same effect see Opinion of the Justices, 77 N.H. 611 (93 A. 311)." In Re Opinion of the Justices, 220 Mass. 613 (108N.E. 574). In fact the courts have so many times announced the conclusion that a tax upon income is a tax upon property which produced the income that the editor of Ruling Case Law thus expresses the rule: It is probably now generally conceded that a tax laid directly upon the income of property is a tax upon the property itself': 26 R.C.L., Taxation, § 116, p.141. Credits, the right to receive money of the debtor, are always held taxable as a species of property: Re Opinion of the Justices, 77 N.H. 611 (93 A. 311). Without

26

setting forth any further review of the authorities we believe that the conclusion is well justified that a tax laid directly upon the income of property, real or personal, may well be regarded as a tax upon the property which produced the income.

(49)  The Defendants should know or should have known the difference between the Plaintiffs Rights and the person or other legal entity exercising a taxable privilege.

(50)  There is ample training available for the Defendants found in the Florida DEPARTMENT OF REVENUE let us remember F.S. 195.027 section (1), written herein number (28).  **See Exhibits E1 and E2 (Training of the Property Appraiser and Tax Collector and their employees.**

(51)  The Plaintiffs neither own a mobile home park nor live in or own a mobile home subdivision as defined by law.

(52)  The Plaintiffs have shown that the Defendants are clearly acting under color of law using the DOR codes for the person or other legal entity clearly conducting a business activity and applying it to the Plaintiffs property merely used as shelter.

(53)  The Defendants, through this process under color of law go to the extent of selling tax deed certificates to the Plaintiffs property with the end goal to steal the Plaintiffs property and sell it for financial gain. We must remember if the Defendants do not have the authority to do what they are doing and are doing this under the color of law then it is theft.

(54)  This is not only unlawful but under Federal Statutes and State Statutes it is criminal.

## COUNT (1)
Violation of Substantive Rights While Acting Under Color of Law
U.S.C. Title 42 § 1983 Deprivation of Rights Under Color of Law

(55)  Under Title 42 § 1983 Civil action for deprivation of rights
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that any action brought against a judicial officer for an actor omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(56)  The Municipality's failure of enforcing the training of its employee's and the failure of the employees to seek the ample training that is available is not only careless but reckless and a wanton disregard of the Plaintiffs rights and is the direct result of constitutional violation.

(57) The Plaintiffs have shown how the assessments and the tax claims are done under color of law and therefore the tax deed certificates sold have all been done under the color of law by the Defendants and depriving, the Plaintiffs of their right to own property and to have the necessities to sustain life.

## COUNT (2)

(58)  Title 18 § 514 fictitious obligations
    (a) Whoever with intent to defraud-
        (1) draws, prints, processes, produces, publishes, or otherwise makes, or attempts or causes the same, within the United States;
        (2)  passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States;
        (3)  utilizes interstate or foreign commerce, including the use of the mails or wire, radio, or other electronic communication, to transmit, transport, ship, move,

28

transfer, or attempts or causes the same, to, from, or through the United States, any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization, shall be guilty of a class B felony.

(b)For purposes of this section, that is defined in section 513 (c) has the same meaning given such term in section 513 (c).

Title 18 § 513 Securities of the States and private entities

(c) For purposes of this section-
(1) the term "counterfeited" means a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety;
(2) the term "forged" means a document that purports to be genuine but is not because has been falsely altered, completed, signed, or endorsed, or contains a false addition thereto or insertion therein, or is a combination of parts of two or more genuine documents;
(3) the term "security" means-
(a) a note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument as defined in section 916 (c) 2 of the Electronic Fund Transfer Act, money order, travelers check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-reorganization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property.

(59)  The Defendants in lockstep use commercial codes meant for the person or

other legal entity to assess and then tax the Plaintiffs' property using this

procedure making the Plaintiffs victims of a fictitious obligation made under the

color of law.


## COUNT (3)

(60)  Title 18 § 1341 Frauds and swindles

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter,

give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than twenty years, or both.

(61)  The Defendants should know or should have known through any training or inquiry into the constitution, statutes or FAC that the law does not permit them to assess and tax the Plaintiffs' property as the person or other legal entity under color of law and send fictitious obligations to their home. We also see under Title 18 § 1961. Definitions for racketeering one of being § 1341.

(62)  The Defendants not only oppress the Plaintiffs but also threaten the Plaintiffs in statements that if you do not pay their tax on your property a certificate will be sold per F.S 197.343 and this could result in loss of property.

(63) The Defendants assessments and tax claims being made under the color of law making them fraudulent documents from the assessments to the tax claims and the conversion of the plaintiffs' property done through the fraudulent tax deed certificates is all done for financial gain using the Federal Mail for the fictitious tax claim and the internet to sell fraudulent tax deed certificates to the plaintiffs' property with no lawful authority.

## COUNT (4)

(64) Title 18 § 241 conspiracy against rights

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States, or because of his having so exercised the same; or if two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured- They shall be fined under this title or imprisoned not more than ten years or both.

(65) The Defendants use the fictitious obligation made under color of law when the

unlawful tax is not paid, they then move forward with their tax deed certificate

made under color of law to start the process to steal the Plaintiffs' entire property

we must remember if it is under color of law, it is done unlawfully and therefore is

theft. Through this unlawful procedure the Defendants have deprived the Plaintiffs

of their right to own, use and enjoy their property without governmental intrusion

and the intimidation of the sale of the Plaintiffs' property using fictitious obligations

and fraudulent tax deed certificates not authorized by law.

(66) The Florida Criminal Statutes are also in harmony with the Federal Statutes.

## COUNT (5)

(67) F.S 843.0855   Criminal actions under color of law or through use of simulated legal process. -
(1) as used in this section:
(a) The term "legal process" means a document or order issued by a court or filed or recorded with an official court of this State or the United States or with any official governmental entity of this state or the United States for the purposes of exercising jurisdiction or representing a claim against a person or property, or for the purpose of directing a person to appear before a court or tribunal, or to perform or refrain from performing a specified act.

31

"Legal process" includes but is not limited to, a summons, lien, complaint, warrant, injunction, writ, notice, pleading, subpoena, or order.

(b) The term "person" means an individual, public or private group incorporated or otherwise, legitimate or illegitimate legal tribunal or entity, informal organization, official or unofficial agency or body, or any assemblage of individuals.

(c) The term "public officer or employee" has the same meaning as provided in s. 817.535.

(2) A person who deliberately impersonates or falsely acts as a public officer or employee in connection with or relating to legal process affecting persons and property, or otherwise takes any action under color of law against persons or property, commits a felony of the third degree, punishable as provided in s. 775.082 s. 775.083 or s.775.084. it is the intent of the Legislature that this section applies if a person acts as an officer or employee purporting to supersede or override any legislation or statute of this state, or to supersede or override any action of any court of this state.

(3) A person who simulates legal process, including, but not limited to, actions affecting title to real estate or personal property, indictments, subpoenas, warrants, injunctions, liens, orders, judgments, or any legal documents or proceedings, knowing or having reason to know the contents of any such documents or proceedings or the basis for any action to be fraudulent, commits a felony of the third degree, punishable as provided in s. 775.082 s.775.083 or s.775.084.

(68)  We see that is also unlawful under the Florida State Statutes to simulate legal process under color of law including exercising jurisdiction, control, or exert acts of ownership, rights or interest in or over the Plaintiffs' property, making false claims against the Plaintiffs property, and affecting title to the Plaintiffs' property under the color of law.


## COUNT (6)

(69)  F.S 817.535 Unlawful filing of false documents or records against real or personal property. -

 (1) As used in this section, the term:

(a) "File" means to present an instrument for recording in an official record or

(b) "Filer" means the person who presents an instrument for recording in an official record or causes an instrument to be presented for recording in an official record.

(c) "instrument" means any judgment, mortgage, assignment, pledge, lien, financing statement, encumbrance, deed, lease, bill of sale, agreement, mortgage, notice of claim of lien, notice of levy, promissory note, mortgage note, release, partial release or satisfaction of any of the foregoing, or any other document that relates to or attempts to restrict the ownership, transfer, or encumbrance of or claim against real or personal property, or any interest in real or personal property.

(d) "Official record" means the series of instruments, regardless of how they are maintained, which a clerk of the circuit court, or any person or entity designated by general law, or county charter, is required or authorized by law to record. The term also includes a series of instruments pertaining to the Uniform Commercial Code filed with the Secretary of State or with any entity under contract with the Secretary of State to maintain Uniform Commercial Code records and a database of judgment liens maintained by the Secretary of State.

(e) "Public officer or employee" means but is not limited to:

 1. A person elected or appointed to a local, state, or federal office, including any person serving on an advisory body, board, commission, committee, council, or authority.

2. An employee of a state, county, municipal, political subdivision, school district, educational institution, or special district agency or entity, including judges, attorneys, law enforcement officers, deputy clerks of court, and marshals.

3. A state or federal executive, legislative, or judicial officer, employee, or volunteer authorized to perform actions or services for any state or federal executive, legislative, or judicial office, or agency.

4. A person who acts as a general or special magistrate, auditor, arbitrator, umpire, referee, hearing officer, or consultant to any state or local governmental entity.

5. A person who is a candidate for public office or judicial position.

(2) (a) A person who files or directs a filer to file, with intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s. 775.082 s. 775.083 or s. 775.084.

(b) A person who violates paragraph (a) a second or subsequent time commits a felony of the second degree, punishable as provided in s. 775.082 s. 775.083 or s.775.084.

(3) If a person is convicted of violating subsection (2) and the owner of the property subject to the false instrument is a public officer or employee, the offence shall be reclassified as follows:

(a) In the case of a felony of the third degree, to a felony of the second degree, punishable as provided in s. 775.082 s. 775.083 or s.775.084.

(70) It is also a crime to file false instruments to restrict the ownership of the

Plaintiffs' property, transfer ownership of the plaintiffs' property, make false claims

against the Plaintiffs' property or exercising any interest in the Plaintiffs' property

under the color of law.

## COUNT (7)

(71) F.S. Chapter 838 BRIBERY; MISUSE OF PUBLIC OFFICE
  § 838.022 Official misconduct. -
  (1) It is unlawful for a public servant or public contractor, to knowingly and
      intentionally obtain a benefit for any person or to cause unlawful harm to
      another, by:
  (a) Falsifying, or causing another person to falsify, any official record or official
      document;
  (b) Concealing, covering up, destroying, mutilating, or altering any official record
      or official document, except as authorized by law or contract, or causing
      another person to perform such an act; or
  (c) Obstructing, delaying, or preventing the communication of information
      relating to the commission of a felony that directly involves or affects the
      government entity served by the public servant or public contractor.
  (2) For the purpose of this section:
  (a) The term "public servant" does not include a candidate who does not
      otherwise qualify as a public servant.
  (b) An official record or official document includes only public records.
  (3) Any person who violates this section commits a felony of the third degree,
      punishable as provided in s. 775.082 s. 775.083 s. 775.084.

  F.S. § 838.014 Definitions. - As used in this chapter, the term:
  (1) "Benefit" means gain or advantage, or anything regarded by the person to be
      benefited as a gain or advantage, including the doing of an act beneficial to
      any person in whose welfare he or she is interested, including any
      commission, gift, gratuity, property, commercial interest, or anything of
      economic value not authorized by law.
  (2) "Bid" includes a response to an invitation to bid," "invitation to negotiate,"
      "request for a quote," or "request for proposals" as those terms are defined
      s. 287.012.
  (3) "Commodity" means any goods, merchandise, wares, produce, chose in action,
      land, article of commerce, or other tangible or intangible property, real,
      personal, or mixed, for use, consumption, production, enjoyment, or resale.
  (4) "Governmental entity" means an agency or entity of the state, a county,
      municipality, or special district or any other public entity created or
      authorized by law.

(5) "Harm" means pecuniary or other loss, disadvantage, or injury to the person affected.

(7) "Public servant" means:
(a)  Any officer or employee of a governmental entity, including any executive, legislative, or judicial branch officer or employee;
(8) "Service" means any kind of activity performed in whole or in part for economic benefit.

(72)  It is unlawful to falsify any official record or any official document, or to have

an invitation to bid on property unlawfully obtained or not authorized by law.

Through the falsifying of the tax roll continuing into the falsifying of a tax claim to

collect unlawful money when not paid they will sell the Plaintiffs' entire property

not authorized by law through the bids on fraudulent tax deed certificates therefore

selling stolen property.

## COUNT (8)

(73) F.S.  § 831.01 Forgery. – Whoever falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of any clerk or register of a court, public register, notary public, town clerk or any public officer, in relation to any matter wherein such certificate, return or attestation may be received as legal proof; or a charter, deed, will, testament, bond, or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange or promissory note, or an order, acquittance, or discharge for money or other property, or an acceptance of a bill of exchange or a promissory note for the payment of money, or any receipt for money, goods or other property, or any passage ticket, pass or other evidence of transportation issued by a common carrier, with intent to injure or defraud any person, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082 s. 775.083 or s. 775.084.

(74)  It is unlawful to defraud, falsify, alter, or counterfeit a public record or a

certificate for money or property with intent to injure or defraud any person. The

Plaintiffs' property through a chain of falsified documents is in the process of being

sold through a conversion using fraudulent tax deed certificates.

## COUNT (9)

(75) F.S. § 775.0844   White Collar Crime Victim Protection Act. -

(1) This section may be cited as the "White Collar Crime Victim Protection Act."

(2) Due to the frequency with which victims, particularly elderly victims, are deceived and cheated by criminals who commit nonviolent frauds and swindles, frequently through the use of the internet and other electronic technology and frequently causing the loss of substantial amounts of property, it is the intent of the Legislature to enhance the sanctions imposed for nonviolent frauds and swindles, protect the public's property, and assist in prosecuting white collar criminals.

(3) As used in this section, "white collar crime" means:

(a) The commission of, or a conspiracy to commit, any felony offense specified in:

2. Chapter 812, relating to theft, robbery, and related crimes.

4. Chapter 817 relating to fraudulent practices.

6. Chapter 831 relating to forgery and counterfeiting.

8. Chapter 838 relating to bribery and misuse of public office.

10. Chapter 895 relating to offences concerning racketeering and illegal debts.

11. Chapter 896 relating to offences related to financial transactions.

(b) A felony offense that is committed with intent to defraud or that involves a conspiracy to defraud.

(c) A felony offence that is committed with intent to temporarily or permanently deprive a person of his or her property or that involves a conspiracy to temporarily or permanently deprive a person of his or her property.

(d) A felony offence that involves or results in the commission of fraud or deceit upon a person or that involves a conspiracy to commit fraud or deceit upon a person.

(4) As used in this section, "aggravated white collar crime" means engaging in at least two white collar crimes that have same or similar intents, results, accomplices, victims, or methods of commission, or that are otherwise interrelated by distinguishing characteristics and are not isolated incidents, provided that at least one of such crimes occurred after the effective date of this act.

(76)  The failure of the municipality to enforce the training of its employees' and the failure of the employees to seek the ample training of the DOR is reckless, careless, and a wanton disregard making them complicit with intent to permanently deprive the Plaintiffs of their property through fraudulent practices F.S. § 195.027 rules and regulations they are to follow but they do not follow the rules and regulations resulting in the fraudulent practices and the violations of the plaintiffs' constitutional protected rights.

36

## COUNT (10)

(77)  F.S. Chapter 812 THEFT, ROBBERY, AND RELATED CRIMES
§ 812.019 dealing in stolen property. -

    (1) Any person who traffics in, or endeavors to traffic in, property that he or she knows or should know was stolen shall be guilty of a felony of the second degree, punishable as provided in ss. 775.082, 775.083, and 775.084.

    (2) Any person who initiates, organizes, plans, finances, directs, manages, or supervises the theft of property and traffics in such stolen property shall be guilty of a felony of the first degree, punishable as provided in ss. 775.082, 775.083, and 775.084.

    F.S. Chapter 812 THEFT, ROBBERY, AND RELATED CRIMES
§812.012 Definitions. - As used in ss. 812.012 – 812.037:

(2) "Dealer" means any person in the business of buying and selling property:

(3) "Obtains or uses" means any manner of:

(a) Taking or exercising control over property.

(b) Making any unauthorized use, disposition, or transfer of property.

(c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.

(d) 1. Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception; or

 2. Other conduct similar in nature.

(4) "Property" means anything of value, and includes:

(a) Real property, including things growing on, affixed to, and found in land.

(b) Tangible or intangible personal property, including rights, privileges, interests, and claims.

(5) "property of another" means property in which a person has an interest upon which another person is not privileged to infringe without consent, whether or not the other person also has an interest in the property.

(7) "Stolen property" means property that has been the subject of any criminally taking.

(8) "Traffic" means:

(a) To sell, transfer, distribute, dispense, or otherwise dispose of property.

(b) To buy, receive, possess, obtain control of, or use property with the intent to sell, transfer, distribute, dispense, or otherwise dispose of property.

(9) "enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity.

(78)  Through the clear falsifying of records under the color of law from the

assessments to the tax claims and the selling of tax deed certificates to the

Plaintiffs property not authorized by law being done under color of law from start to finish and exercising control over the Plaintiffs' property with the intent to sell without any Due process.

## COUNT (11)

(79) F.S. Chapter 895 OFFENSES CONCERNING RACKETEERING AND ILLEGAL DEBTS

§ 895.03 Prohibited activities and defense. -

(1) It is unlawful for any person who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

F.S. § 895.02 Definitions. – As used ss. 895.01-895.08, the term:

(4) "Documentary material" means any book, paper, document, writing, drawing, graph, chart, photograph, phonorecord, magnetic tape, computer printout, other data compilation from which information can be translated into usable form, or other tangible item.

(5) "Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this State, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities. A criminal gang, as defined in s. 874.03, constitutes an enterprise.

(7) "Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after October 1, 1977, and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.

(8) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
(a) Any crime that is chargeable by petition, indictment, or information under the following provisions of the Florida Statutes:
33. Chapter 812, relating to theft, robbery, and related crimes.
35. Chapter 817, relating to fraudulent practices, false pretenses, fraud generally, credit card crimes, and patient brokering.
39. Chapter 831, relating to forgery and counterfeiting.
43. Chapter 838, relating to bribery and misuse of public office.
44. Chapter 843, relating to obstruction of justice.
51.
(b) Any conduct defined as "racketeering activity" under 18 U.S.C. s. 1961 (1)


(80)  This criminal activity is not only being done to the Plaintiffs but to many more people in the county of Okeechobee. The Defendants' wanton disregard for the plaintiffs' constitutional rights and the disregard for any training or inquiry into the constitutions, laws, and the DOR codes makes them complicit with the multiple chapters named herein defining racketeering.


 "The guaranty is violated whenever any person, by virtue of public position under the federal or state government, deprives another of any right protected by that amendment. The guaranty may be violated by unfairness or corruption of officers in the performance of administrative functions." **Chicago, B.& Q. R. Co. vs. Chicago, 166 U.S. 226, 41 L Ed 979, 17 S Ct 581; Norris vs. Alabama, 294 U.S. 587, 79 L Ed 1074, 55S Ct 579; Mooney vs. Holohan, 294 U.S. 103, 79 L Ed 791, 55 S Ct 340, 98 ALR 406, reh den 294 U.S. 732, 79 L Ed 1261, 55 S Ct 511.**

## CONCLUSION

(81)  The Defendants the Municipality of Okeechobee and its employees Mickey L Bandi Okeechobee County Property Appraiser and Celeste Watford Okeechobee County Tax Collector through the disregard for any training that is the very need to do their job properly and prevent the constitutional violation and crimes committed against the Plaintiffs. The Plaintiffs exercising their right to own property and have

the necessities to sustain life are a right and not a privilege as the constitution, statutes DOR codes show herein. The Plaintiffs' property being in jeopardy are a clear violation of their rights to own, use and enjoy their property through the adopting and enforcing their perversion of the tax code and the disregard of the Constitutions and the Florida statutes and the FAC coming from the wanton disregard of the Plaintiffs rights and failure of their training. As a direct and proximate result of Defendant's illegal policies and practices, Plaintiffs are being wrongfully deprived of peaceful enjoyment of their property and possession of their money under color of law by all Defendants. Each Defendant either took part in the action or failed to act, or implicitly authorized, approved, or knowingly acquiesced or failed to remedy the wrongs at issue within the meaning of Title 42 U.S.C. § 1982 § 1983 § 1985 and § 1986.

"A person liable for a tax is a person subject to a tax and comes squarely within the definition of a taxpayer in the statute." **Houston Street Corp. vs. commissioner, 84 F.2d 821, 822 (5th Cir. 1936)**

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is, in truth, a "personal" right, whether the "property" in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized. J. Locke, Of Civil Government 82-85 (1924); J. Adams, A Defence of the Constitutions of Government of the United States of America, in F. Coker, Democracy, Liberty, and Property 121-132 (1942); 1 W. Blackstone, Commentaries *138-140. Congress recognized these rights in 1871 when it enacted the predecessor of 42 U.S.C. 1983 and 1343(3). We do no more than reaffirm the judgment of Congress today." **Lynch vs. Household Finance Corp., 405 U.S. 538 (1972)**

## RELIEF SOUGHT

Plaintiffs incorporate by reference the facts set forth above as if set forth herein full.

(82)  Wherefore Plaintiffs seek to recover compensatory and punitive damages for monetary loss, intentional infliction of mental and emotional distress, impairment of reputation, personal humiliation, and deprivation of fundamental constitutional rights suffered by Plaintiffs to all Defendants for their color of law actions performed in their individual capacity against Plaintiffs under Title 28 U.S.C. § 1343 (a) (4) **See Slicker vs. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000).**

(83)  It is fact that Defendants acting as state actors under color of law, deprived the Plaintiffs of substantive rights to property ownership, due process and equal protection of the law. Plaintiffs' constitutional right to property ownership, procedural due process, and the equal protection of the laws, have been directly violated under color of law by all Defendants named within the meaning of Title 42 U.S.C. § 1983. **See Parratt v. Taylor, 451 U.S. 527, 535 (1981).**

"The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no election." **West Viginia Board of Education vs. Barnette, 319 U.S. 624, 638 (1943).**

41

## Monetary Loss and Real Damages

(84) The Preponderance of the evidence on the County of Okeechobee records would

suggest that through Defendant County of Okeechobee's official condemnation and

past abuses annually over the years of Plaintiffs number 1 Scott and Mary Principe

2011-2023 Plaintiffs have been unlawfully deprived of approximately $210,000

dollars under color of Defendant Okeechobee County municipality's tax scheme,

pertaining to the purported taxes on the Plaintiff's non-commercial property.

Plaintiff number 2 David Allen Steen between the years 2020-2023 $145,000 supra.

"The governing principle is accurately stated in 20 Corpus Juris, 566, "There need
not be an actual, physical taking, but any destruction, restriction or interruption of
the common and necessary use and enjoyment of property in a lawful manner may
constitute a taking for which compensation must be made to the owner of the
property." **Andress vs. Zoning Board of adjustment, 410 Pa. 77 (1963).**

(85) Wherefore Plaintiffs request that this court grant the above relief in real

damages.

## Compensatory Damages

(86) Defendant County of Okeechobee Municipality's improper training of

Defendants Okeechobee County Property Appraiser Micky L Bandi and Okeechobee

County Tax Collector Celeste Watford caused Plaintiff's constitutional deprivations.

(87) The policy, practice, and custom, of Defendant County of Okeechobee and its

named employees, agents, and/or servants, of adopting and enforcing their

unconstitutional application and perversion of the tax code on Plaintiff's non-

commercial property, violates the Fourth, Fifth, and Fourteenth Amendments to the

United States Constitution, by imposing an unconstitutional condition upon

Plaintiff's lawful exercise of their property Rights.

"The addition to damages based on monetary loss or physical pain and suffering,...a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation." **Slicker vs. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000)**

## Punitive Damages

(88)  The failure of the individual Defendants Mickey L Bandi's, and Celeste

Watford's failure to seek any of the ample training provided by the DOR and the

wanton disregard for any training to prevent unlawful and criminal actions against

the Plaintiffs with unlawful assessments, tax claims, and the exercise of control

over the Plaintiffs property using an unlawful conversion on the Plaintiff's property

selling fraudulent tax deed certificates to the Plaintiff's property. This reckless and

careless wanton disregard for the plaintiff's fundamental rights has instilled fear in

the Plaintiffs of loss of their property and home.

(89) As a causation of the actions of the individual Defendants acting as state actors

for Defendant County of Okeechobee Municipality Plaintiffs have sustained mental

distress and disruption of sleep.

(90) Defendants Micky L Bandi and Celeste Watford's felonious and malicious

conduct is being done in a manner exhibiting a wanton and willful disregard of

Plaintiff's rights, health, safety, and welfare and property.

"In a case brought against both individuals and government entities, the jury instructions should expressly state punitive damages may be assessed only against

43

the individual defendants for their respective conduct." **Young Apartments, Inc. vs. Town of Jupiter, Fla., 529 F.3d 1027, 1047 (11th Cir. 2008).**

(91) Defendant Okeechobee County Municipality's business enterprising and criminal activity of counterfeiting, securities fraud, theft, and extortion involved a reckless and callous indifference to Plaintiff's federally protected rights.

(92) Wherefore, punitive damages against the individual Defendants are actionable under 42 U.S.C. § 1983 for their respective conduct as employees of Defendant Okeechobee County Municipality in the amount of 200 times real damages.

## Damages Restated

(93)  Therefore, on the issue of relief, Plaintiffs request:

A.  Judgment against Micky L Bandi, Celeste Watford, and Okeechobee County municipality, on all counts pleaded within this complaint,

B.  Real damages for Plaintiffs number 1 of at least $210,000

C.  Real damages for Plaintiff number 2 of at least $145,000

D. punitive damages of 200 times awarded in accordance's with the laws of torts pursuant to **Pacific mutual Life Insurance Company vs. Cleopatra Haslip et al, U.S. 1,111 S. Ct. 1032, 113 L.Ed.2d 1 (1991),**

E. Any applicable statutory damages or penalties,

F. Any other relief found just and reasonable by this Court.

9-6-24

Dated: Month, day, year

Mary Pisa

896 NE 104th Ct

Okeechobee, FL  34974

(863) 634-8257

2114 SE 34th LN

Okeechobee, FL. 34974

863-697 2243

Respectfully submitted,

Name of Filer

_____

Attorney Bar Number *(if applicable)*

_____

Attorney E-mail Address *(if applicable)*

_____

Firm Name *(if applicable)*

896 NE 104th Ct

Street Address

Okeechobee, FL   34974

City, State, Zip Code

Telephone: 863-634-8256

Facsimile: _____

_____

Attorneys for Plaintiff/Defendant *[Party name(s)]*
*(if applicable)*

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by

_____ *[specify method of service]* on _____*[date]*

on all counsel or parties of record on the Service List below.

_____

Signature of Filer